**VICTOR N. PIPPINS**
California State Bar No. 251953
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
victor_pippins@fd.org

Attorneys for Ms. Aguilar-Buruel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ELOISA AGUILAR-BURUEL,<br>Defendant. | ) | Case No.: 08CR0250-WQH<br><br>Date: March 10, 2008<br>Time: 2:00 p.m.<br><br>**STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

**I.**

**STATEMENT OF FACTS**

On January 17, 2008, at about 8:00 p.m, Ms. Eloisa Aguilar-Buruel was driving a 1994 Ford Tempo at the Calexico East Port of Entry. She gave a negative Customs declaration to Border Protection Primary Officer C. Gibson, who then directed her to the vehicle secondary lot for further inspection.

In the secondary lot, Canine Enforcement Officer M. McGee utilized his Human and Narcotic Detector Dog, which alerted to the passenger door of the vehicle. Ms. Aguilar-Buruel again gave a negative Customs declaration. Further inspection of the vehicle revealed fourteen packages concealed within the dashboard, rear seat, passenger front seat and the rear passenger door. One of the packages field tested positive for marijuana. The fourteen packages had a combined net weight of 53.80 kilograms (118.36 pounds) of marijuana.

//

Ms. Aguilar-Buruel was arrested for importation of marijuana. It is alleged that Ms. Aguilar-Buruel was advised of her rights per *Miranda*, and subsequently stated that she understood those rights and was willing to answer questions without the presence of an attorney. Ms. Aguilar-Buruel then allegedly made statements to the agents, including providing them with the contact information of the registered owner of the vehicle.

After the interrogation was finished at about 2:00 a.m., Ms. Aguilar-Buruel was arrested for violations of 21 U.S.C. 852 and 960, and booked into the Imperial County Jail in El Centro, California.

On January 30,2008, the January 2007 Grand Jury panel issued an indictment charging Ms. Aguilar-Buruel with violating 21 U.S.C. 952 and 960, Importation of Marijuana, and 21 U.S.C. 841(a)(1), possession with intent to distribute marijuana. Ms. Aguilar-Buruel has pled not guilty to all charges.

## II.

## THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE INSTRUCTIONS PROVIDED TO THE GRAND JURY CANNOT BE RECONCILED WITH THE FIFTH AMENDMENT

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions give to grand jurors in the Southern District of California. See United States v. Navarro-Vargas 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005). See also United States v. Cortes-Rivera, 454 F.3d 1038 (9th Cir. 2006). Ms. Agular-Buruel respectfully disagrees with the Navarro-Vargas majority opinion, and argues that this Court should dismiss the indictment based upon structural error for the reasons set forth in Judge Hawkins' dissent in the en banc opinion, see Navarro-Vargas, 408 F.3d at 1210-11 (Hawkins, J., dissenting), and Judge Kozinski's dissent in the three judge panel decision. See United States v. Navarro-Vargas, 367 F.3d 896, 899-904 (9th Cir. 2004) (Kozinski, J., dissenting).

Further, Ms. Aguilar-Buruel respectfully requests that this Court order production of the transcript of the voir dire and instruction of this grand jury panel. The entirety of the instructions and voir dire of the grand jury are important in this case because the grand jury receives instructions throughout the voir dire process. Once these transcripts become available to Ms. Agular-Buruel she may request to supplement these motions. See United States v. Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not.").

## III.

## MOTION TO SUPPRESS STATEMENTS

Ms. Aguilar-Buruel moves to suppress any statements made at the time of her arrest on the grounds that her Miranda waiver was not knowing, intelligent, and voluntary. Moreover, Ms. Aguilar-Buruel moves to suppress any other statements made on the grounds that those statements were not made voluntarily.

### A. The Government must demonstrate compliance with *Miranda*.

In order for any statements made by Ms. Aguilar-Buruel to be admissible against her, the government must demonstrate that they were obtained in compliance with the Miranda decision.

#### 1. Ms. Aguilar-Buruel's Waiver Must Be Voluntary, Knowing, and Intelligent.

Complete discovery has not been received in this case. Therefore, the question remains whether Ms. Aguilar-Buruel's waiver was voluntary, knowing, and intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When interrogation continues without the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality of the circumstances surrounding the case. Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Garibay, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). Not only must the waiver be uncoerced, then, it must also involve a "requisite level of comprehension" before a court may conclude that Miranda rights have been legitimately waived. Id. (quoting Colorado v. Spring, 479 U.S. at 573).

Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used against the defendant.

Miranda, 384 U.S. at 479. The government in this case must prove that Ms. Aguilar-Buruel waived her rights intelligently and voluntarily. Ms. Aguilar-Buruel disputes any allegation that her waiver was knowing, intelligent, and voluntarily.

**2. Ms. Aguilar-Buruel's Statements Must be Voluntary.**

Even if Ms. Aguilar-Buruel's statements were made after a voluntary, knowing, and intelligent waiver, they must have been made voluntarily, or they must be suppressed. The Supreme Court has held that even where the procedural safeguards of Miranda are satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded on involuntary statements. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964); see also United States v. Davidson, 768 F.2d 1266, 1269 (11th Cir. 1985)("an accused is deprived of due process if his conviction rests wholly or partially upon an involuntary confession, even if the statement is true, and even if there is ample independent evidence of guilt."). The government has the burden of proving that statements are voluntary by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 483 (1972). An accused's confession must result from an "independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." Martin v. Wainwright, 770 F. 2d 918, 924 (11th Cir. 1985), modified, 781 F. 2d 185 (11th Cir.) (quotations omitted).

To be considered voluntary, a statement must be the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the court must consider the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).[1] A confession is deemed involuntary not only if coerced by physical intimidation, but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)); accord, United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981). Here,

[1] Among the factors which are considered are the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of questioning, and the use of physical punishment such as deprivation of food or sleep.

Ms. Aguilar-Buruel's statements were involuntary. An evidentiary hearing in this case will reveal this case is indistinguishable from United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981). Accordingly, suppression of Ms. Aguilar-Buruel's statements is required.

**B. This Court Must Conduct an Evidentiary Hearing.**

Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Ms. Aguilar-Buruel are voluntary. In addition, section 3501(b) requires this Court to consider various enumerated factors, including whether Ms. Aguilar-Buruel understood the nature of the charges against her and whether she understood his rights. Without evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "`suppression hearings are often as important as the trial itself,'" Id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

## IV.

## MOTION TO PRESERVE AND INSPECT EVIDENCE

Ms. Aguilar-Buruel requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) the alleged contraband found in the manifold, including samples used to conduct tests; (2) the containers or packaging within which the contraband was discovered; (3) the results of any fingerprint analysis; (4) the defendant's personal effects; (5) any videotapes capturing Ms. Aguilar-Buruel in this matter; (6) the vehicle seized pursuant to the arrest. Ms. Aguilar-Buruel requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Ms. Aguilar-Buruel requests an order granting defense counsel and/or their investigators access to the alleged contraband and other evidence for the purposes of investigation, including inspection,

photographing, and re-weighing of the alleged contraband if necessary. Fed. R. Crim. P. 16(a)(1)(C). A proposed Order is attached for the convenience of the Court.

Ms. Aguilar-Buruel requests that the evidence in the case be preserved throughout the pendency of the case, including any appeals.

**V.**

**MOTION TO COMPEL DISCOVERY**

Ms. Aguilar-Buruel moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A), (B) and (C). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) The Defendant's Prior Record. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) Tangible Objects. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

//

(9) Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(10) Impeachment Evidence. The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. See Fed R. Evid. 608, 609 and 613; Brady v. Maryland, supra.

(11) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(12) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(13) Witness Addresses. The defendant requests the name and last known address of each prospective Government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

(14) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him who was unsure of his identity, or participation in the crime charged.

(15) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(16) Jencks Act Material. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness'

interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(17) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(18) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(19) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Ms. Aguilar-Buruel. The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(21) Government Examination of Law Enforcement Personnel Files. Mr. Meza-Padilla requests that the Government examine the personnel files and any other files within its custody, care or control, or which

could be obtained by the government, for all testifying witnesses, including testifying officers. Ms. Aguilar-Buruel requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). The obligation to examine files arises by virtue of the defense making a demand for their review: the Ninth Circuit in Henthorn remanded for in camera review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Ms. Aguilar-Buruel prior to trial. Ms. Aguilar-Buruel specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under Henthorn, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

(22) Expert Summaries. Defendant requests written summaries and results of any experiments of all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. Fed. R. Crim. P. 16(a)(1)(G). This request includes, but is not limited to, fingerprint expert testimony.

(23) Residual Request. Ms. Aguilar-Buruel intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Ms. Aguilar-Buruel requests that the Government provide her and her attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## VI.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process. To date, counsel has received**14 pages** of discovery from the government in this matter.

//

## VII.

## CONCLUSION

For these and all the foregoing reasons, the defendant, Ms. Aguilar-Buruel, respectfully requests that this court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

*/s/ Victor N. Pippins*

DATED: February 15, 2008

**VICTOR N. PIPPINS**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Aguilar-Buruel
E-mail: victor_pippins@fd.org