KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELOISA LIZETH AGUILAR-BURUEL,<br><br>Defendant. | Criminal Case No. 08CR0250-WQH<br><br>HEARING DATE: March 10, 2008<br>TIME: 2:00 p.m.<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS:<br><br>(1) COMPEL DISCOVERY/PRESERVE EVIDENCE;<br>(2) DISMISS DUE TO GRAND JURY INSTRUCTIONS;<br>(3) SUPPRESS STATEMENTS;<br>(4) PRESERVE EVIDENCE;<br>(5) FOR LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On January 30, 2008, a Indictment was returned in the Southern District of California charging Defendant Eloisa Lizeth Aguilar-Buruel ("Defendant") with importation of 53.80 kilograms (approximately 118.36 pounds) marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of 53.80 kilograms (approximately 118.36 pounds) marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On January 31, 2008, the Court arraigned Defendant on the Indictment and entered a not guilty plea. The Court scheduled a motion hearing date for March 10, 2008.

On February 4, 2008, the United States filed motions for reciprocal discovery and fingerprint exemplars. On February 15, 2008, Defendant filed motions to compel discovery, dismiss, suppress, and for leave to file further motions. The United States now responds to Defendant's motions.

**II**

**STATEMENT OF FACTS**

**A. Primary Inspection**

On Thursday, January 17, 2008, at approximately 8:01 p.m., Defendant entered the United States from Mexico at the Calexico, California, East Port of Entry. Defendant was the driver of a 1994 Ford Tempo, bearing Baja California license plate BEA9615 (hereinafter "the vehicle"). Customs and Border Protection ("CBP") Officer Charles Gipson was working in primary inspection lane four. Defendant applied for entry into the United States. Officer Gipson observed that Defendant was traveling with a minor female. Officer Gipson obtained a negative Customs declaration from Defendant. Officer Gipson referred Defendant and the vehicle to secondary.

**B. <u>Secondary Inspection</u>**

Upon entering the secondary inspection area, Canine Enforcement Officer Monty McGee screened the vehicle with his narcotics/human detector dog. The dog alerted to the passenger side door. After learning of the dog alert, Officer Sergio Beltran instruct Defendant to move her vehicle to a parking stall. Defendant provided a DSP-150 as evidence of her identity. Officer Beltran inquired about the minor. Defendant stated that she was her daughter. Officer Beltran received a negative customs declaration from Defendant. In response to questioning, Defendant stated that she was on her way to Walmart and the vehicle belonged to her husband. Officer Beltran asked Defendant to step out of the vehicle and open the hood and trunk. She complied. After screening the vehicle again, the dog alerted to the rear seat of the vehicle. Defendant and her daughter were escorted to the secondary office. A patdown search was conducted and yielded negative results. While searching the vehicle, Officer Beltran found 14 packages inside the dash, rear seat, front passenger seat, and rear passenger door. One of the packages was probed and a leafy green substance was extracted which subsequently field tested positive for marijuana. The packages had a combined weight of 53.80 kilograms (approximately 118.36 pounds).

Officer Beltran seized the marijuana. A later search of Defendant revealed that she was in possession of $76.00. The vehicle was registered to Jesus Ernesto Sauceda-Sepulveda.

Special Agents Renato Gates and Lonnie Brasby were notified of the seizure and responded to the port to conduct the post seizure investigation. Upon arriving, the Agents assumed responsibility for Defendant's case.

**C. <u>Defendant's Statement</u>**

At approximately 12:58 a.m., Agent Gates advised Defendant of her arrest for importation of a controlled substance. Agent Gates further advised Defendant that before she was asked any questions regarding the circumstances of her arrest, Defendant must first understand her rights.

Agent Gonzalez advised Defendant of her <u>Miranda</u> rights, using a United States Customs Service Advice of Rights form. Agent Gates advised Defendant of her <u>Miranda</u> rights in the Spanish language as witnessed by Agent Brasby. This form was shown to Defendant, who was given the opportunity to read each statement as Agent Gates read them to her. After being read each statement of her rights,

Agent Gates asked Defendant whether he understood that right. In each instance, she stated, "yes." Defendant then initialed next to each right. Finally, Defendant signed the form waiving her Miranda rights. During the interview, Defendant denied knowledge of the marijuana concealed within the vehicle.

During the videotaped interview, Defendant explained that she was on her way to Walmat. She borrowed her boyfriend's vehicle. She had been dating this person for a year. However, she was unable to provide a home address, work address, or vehicles. She had only one cellular telephone number for him. Finally, she provided a general description of him.

**III**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The United States has already delivered 14 pages of discovery and one DVD to defense counsel including investigative reports and Defendant's statements. The United States is producing another 45 pages of discovery including photographs, witness statements, and copies of documents seized from the vehicle. Nevertheless, Defendant makes a series of discovery requests. The following is the United States' response to Defendant's various discovery requests.

**1. Statements of Defendant**

The United States has already produced reports disclosing the substance of Defendant's oral and written statements. The United States will continue to produce discovery related to Defendant's statements made in response to questions by agents. Relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

**2. Arrest Reports and Notes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

**3. Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**4. Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

**5. Defendant's Prior Record**

The United States has already provided Defendant with a copy of Defendant's criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

**6. Proposed 404(b) Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce Defendant's prior crossing as evidence of knowledge and lack of mistake.

**7. Evidence Seized**

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**8. Tangible Objects**

Again, the United States is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**9. Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**10-11. Impeachment and Evidence of Criminal Investigation**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

/ / /

/ / /

**12. Evidence Affecting Perception**

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

**13. Witness Addresses**

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports.

**14. Witnesses Favorable to Defendant**

The United States is not aware of any witness who made a favorable statement concerning Defendant.

**15. Statements Favorable to Defendant**

The United States is not aware of any witness who made a favorable statement concerning Defendant.

**16. Jencks Act Material**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Jencks Act.

**17. Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

/ / /

/ / /

**18. Agreements Between the Government and Witnesses**

The United States is unaware of the existence of any agreements between the Government and witnesses in this case.

**19. Informants and Cooperating Witnesses**

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the United States Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided.

**20. Bias By Informants or Cooperating Witnesses**

The United States is unaware of the existence of an informant in this case.

/ / /

**21. Personnel Records of Officers Involved in the Arrest**

The United States will review the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

The United States objects to this request. Defendant has not shown how any personnel records of the arresting officers are relevant to this case. Defense counsel has no constitutional right to conduct a search of agency files to argue relevance. See Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987) (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one")). Thus, the United States will review these records for impeachment information, but will not provide these records as Rule 16 discovery.

To support his request, Defendant cites Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974). In Pitchess, the California Supreme Court was addressing California Evidence Codes which permit the disclosure of public entity personnel records provided that certain requirements are followed.[1/] Id. However, no such code exists under the Federal Rules of Evidence.

**22. Expert Witnesses**

Defendant requests written reports and summaries of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G). The United States will disclose to Defendant the name,

---

[1/] Under California Evidence Code § 1040, a public entity has an absolute privilege against disclosure of official information. However, under section 1043 disclosure may be sought by a written motion to the court after providing written notice to the public entity which has custody of the records sought, supported by an affidavit showing good cause for discovery including materiality to the subject matter involved in the pending litigation. Once good cause for discovery is established, section 1045 requires the court to examine the information in camera to determine relevance to the case; as part of this in camera process, the court must exclude from disclosure certain categories of information, including complaints more than five years old, the conclusions of any officer investigating a complaint, and facts are so remote as to make disclosure of little or no practical benefit. Section 1045 also establishes general criteria to guide the court's determination and insure the privacy interests of the officers subject to the motion are protected.

qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

At trial, the United States will offer the testimony of a valuation expert and forensic chemist. Moreover, the United States may offer the testimony of a Fingerprint Expert to establish Defendant's identity and prior history. The United States will provide a summary, and qualifications of the experts when they are available.

Although not expected to give expert opinions based upon specialized knowledge, the United States may also offer the testimony of a records custodian to introduce documents from Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".). This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.

**26. Residual Requests**

The United States objects to this request. The United States has and will continue to comply with its discovery obligations.

## IV

## THE GRAND JURY WAS PROPERLY INSTRUCTED

Defendant urges this Court to dismiss the Indictment based on the district court's instructions to the grand jury. (Def.'s Mot. 2-3.) As Defendant acknowledges, these arguments have been decided against Defendant. See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005); see also United States v. Rivera-Sillas, 417 F.3d 1014, 1021 (9th Cir. Cal. 2004), amended by, 2005 U.S. App. LEXIS 18306, at *16 (2005), cert. denied, 126 S. Ct. 1094 (2006); United States v. Adams, 343 F.3d 1024 (9th Cir. 2003); United States v. Cedano-Arellano, 332 F.3d 568, 573 (9th Cir. 2003); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002). In summary, the model grand jury instruction is

constitutional, and the grand jury was properly instructed. Accordingly, Defendant's motion to dismiss on these grounds should be denied.

Next, Defendant moves for production of the grand jury transcripts based upon speculation about what might have happened. This motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Defendant has not shown a particularized need.

Defendant simply speculates that the instructions to the grand jury might be deficient, and might provide a basis for further motions. However, the Ninth Circuit has held that there is no constitutional right to have any legal instruction provided to the grand jury, United States v. Kenny, 645 F. 2d 1323, 1347 (9th Cir. 1981), so obtaining the grand jury instructions would not in any way help "to avoid a possible injustice" in another legal proceeding, as required under the test set forth by the Supreme Court, in the case of Douglas Oil Co. v. Petrol Stops Northwest, 441, U.S. 211, 222 (1979). As the Supreme Court has stated, "an indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits." Costello v. United States, 350 U.S. 359, 363 (1956).

Moreover, it is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. See United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968); Huerta v. United States, 322 F.2d 1 (9th Cir. 1963).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. See United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id.

Besides Defendant's speculation, there is no basis upon which to dismiss the Indictment due to improper conduct before the grand jury. As such, this request for transcripts should be denied.

**V**

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED**

Defendant moves to suppress her statements arguing they were involuntary or the Miranda waiver was deficient. (Def.'s Mot. 3.) However, Defendant's pre-arrest statement are admissible since they did not require a Miranda warning. Defendant's post-arrest statements were made after she waived her Miranda rights. Thus, Defendant's statements are admissible.

**A. Defendant's Motion Should Be Denied Without a Hearing**

The Court can and should deny Defendant's motion to suppress without a hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of Defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The Ninth Circuit has stated that an allegation of a Miranda violation that is mere boilerplate language fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-

23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

Under Local Rule 47.1(g), the declaration supporting a motion must set predicate facts and show "affirmatively that the declarant is competent to testify." Finally, pursuant to Local Rule 47.1(g)(4), "[e]ach declarant . . . shall be made available for cross-examination at the hearing of the motion. . . ."

Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration creating an issue of fact regarding Defendant's pre-arrest or post-arrest statements. As such, this Court should deny Defendant's motion to suppress, based on the Statement of Facts attached to the Complaint in this case, and find that all of Defendant's statements were voluntarily made. If the Court chooses to hold an evidentiary hearing on Defendant's motion, the United States would welcome the opportunity to prove that Defendant's statements were voluntary and are, therefore, admissible.

**B. Defendant's Pre-arrest Statements Are Admissible**

While not raised in her motion, Defendant's pre-arrest statements are admissible. In Miranda v. Arizona, 396 U.S. 868 (1969), the Supreme Court held that under the Fourth Amendment a person must be advised of his rights prior to incriminating questioning after custodial arrest. A Miranda warning was not necessary for Defendant's pre-arrest statements for two reasons. First, Defendant was not in custody when she was questioned. Second, Defendant was not subjected to incriminating questioning while in custody.

First, to determine whether a person is in custody for purposes of Miranda, a court looks to the circumstances surrounding the interrogation. See United States v. Bravo, 295 F.3d 1002, 1004 (9th Cir. 2002) ("whether an individual in custody depends upon the objective circumstances of the situation, or whether "'a reasonable innocent person . . . would conclude that after brief questioning he or she would not be free to leave."'"). As previously discussed, Defendant was not in custody during her time at the port. Thus, there was no need for Miranda warnings.

Second, to determine whether questioning is "interrogation" within the meaning of Miranda, a court looks to whether "under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect." United States v. Salgado, 292

F.3d 1169, 1172 (9th Cir. 2002) (internal quotations and citations omitted); United States v. Mata-Abundiz, 717 F.2d 1277, 1278-79 (9th Cir. 1983) ("If an INS investigator has no reason to suspect that the question asked is likely to elicit an incriminating response, there is no interrogation and, therefore, no Miranda violation."); see also United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986) (detaining a person for routine border questioning is not custodial interrogation). Consistent with Salgado, Defendant was asked inspection questions that were not likely to lead to incriminating response. Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). As such, there is no Miranda violation.

Following the arrest of Defendant after discovery of the drugs, Agents timely advised Defendant that she was under arrest. Defendant was also timely advised of her Miranda warnings, which she waived. All statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made prior to arrest.

**C. Defendant's Post-arrest Statements Are Admissible**

Defendant argues that her post-arrest statements were involuntary without any facts. However, Defendant validly waived her rights.

The United States must establish only by a preponderance of the evidence that a defendant knowingly and intelligently waived his or her Miranda rights. United States v. Doe, 60 F.3d 544, 546 (9th Cir. 1995) (citing Colorando v. Connelly, 479 U.S. 157, 168-69 (1986)). "'Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant.'" United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1994) (quoting United States v. Bernard S., 795 F.2d 749, 751 (9th Cir. 1986)). Evidence that defendants understand their Miranda rights after such rights are explained is the preeminent factor in determining the validity of a waiver. See, e.g., Doe, 60 F.3d at 546 (waiver valid where defendant indicated he understood his rights and agreed to speak with officers); Bautista-Avila, 6 F.3d at 1366; Bernard S., 795 F.2d at 752. To determine voluntariness, the Court must "consider the totality of the circumstances and determine whether 'the government obtained the statement by physical or psychological coercion or by improper

inducement so that the suspect's will was overborne.'" United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994) (citations omitted).

Here, the totality of the circumstances makes clear that Defendant waived her right to remain silent. Agent Gates advised Defendant of her Miranda rights. Defendant stated she understood her rights and waived her right to remain silent. She even initialed and signed a form. In response to questioning, Defendant provided a detailed account of the incident. Defendant was coherent, gave responsive answers to questions, and was able to remember the incident. Thus, Defendants' post-arrest statements are admissible.

**D. Routine Booking Information**

Finally, upon arresting Defendant, Agents asked Defendant routine booking questions for the purpose of obtaining background biographical information for filling out a personal history report and a booking slip. "Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections." United States v. Perez, 776 F.2d 797, 799 (9th Cir. 1985); see also Pennsylvania v. Muniz, 496 U.S. 582, 600-602 (1990). Thus, Defendant's responses to the Agents' booking questions therefore should be admitted.

## VI

## PRESERVATION AND INSPECTION OF EVIDENCE

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence for an unlimited time. On February 11, 2007, the United States sent a letter specifically asking when Defendant wanted to inspect the evidence and has received no response.

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

/ / /

**VII**

**DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

**VIII**

**CONCLUSION**

For the foregoing reasons, the United States asks that the Court deny Defendant's motions, except where unopposed, limit further motions to those based on new law or facts.

DATED: March 4, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Christopher M. Alexander*
______________________________

CHRISTOPHER M. ALEXANADER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Christopher.M.Alexander@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, Plaintiff, v. ELOISA LIZETH AGUILAR-BURUEL, Defendant.

Criminal Case No. 08CR0250-WQH

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Motions for (1) reciprocal discovery, together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Victor Pippins, Esq.
   Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2008.

*s/Christopher M. Alexander*

CHRISTOPHER M. ALEXANDER