**VICTOR N. PIPPINS**
California State Bar No. 251953
**MICHELLE BETANCOURT**
California State Bar No. 215035
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Email: Victor_Pippins@fd.org

Attorneys for ELOISA AGUILAR-BURUEL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE WILLIAM Q. HAYES**)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>**ELOISA AGUILAR-BURUEL,**<br>Defendant. | Case No. 08cr0250-WQH<br><br>Date: April 21, 2008<br>Time: 2:00 p.m.<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS *IN LIMINE*** |

**I.**

**STATEMENT OF FACTS**[1/]

On January 17, 2008, at approximately 8:00 p.m., Eloisa Aguilar-Buruel arrived in the United States from the Republic of Mexico at the Calexico, California, West Port of Entry. Ms. Aguilar-Buruel, a Mexican citizen, was the driver of a 1994 Ford Tempo, and was accompanied by her minor daughter .

At the primary inspection booth, Ms. Aguilar-Buruel gave a negative customs declaration and was directed to the secondary vehicle lot by Customs and Border Protection Primary Officer C. Gibson as part of a generalized enforcement operation. After being referred to secondary inspection, a narcotics detector dog alerted to the passenger door of the vehicle. Agents discovered fourteen packages containing marijuana concealed within various part of the vehicle. The total weight of the fourteen packages was reported as 53.80 kilograms (118.36 pounds).

[1/] Most of this statement of facts is based on information provided by the government. Ms. Aguilar-Buruel does not admit its accuracy and reserves the right to challenge it at a later time.

Ms. Aguilar-Buruel was arrested for importation of a controlled substance and taken to an interrogation room. During her interrogation by Agents Gates and Brasby, Ms. Aguilar-Buruel denied knowledge of the marijuana and stated that she had borrowed the vehicle from her boyfriend in order go shopping at the Wal-Mart store in Calexico. During a lengthy interrogation, Ms. Aguilar-Buruel provided the agents with the name, phone number, and physical description of her boyfriend, who was the registered owner of the vehicle.

On January 30, 2008, an indictment was filed charging Ms. Aguilar-Buruel with importation of marijuana into the United States in violation of 21 U.S.C. §§ 952 and 960, and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).

## II.

## ADMIT TESTIMONY AND INVESTIGATIVE REPORTS MATERIAL TO DEFENSE OF THIRD-PARTY CULPABILITY

Defense counsel intends to present evidence material to Ms. Aguilar-Buruel's defense that a third-party secreted marijuana into the vehicle she drove across the border without her knowledge. In particular, the defense intends to demonstrate that the registered owner of the vehicle, Jesus Ernesto Saucedo-Sepulveda took advantage of Ms. Aguilar-Buruel and involved her in a marijuana smuggling venture without her knowledge. Defense counsel raises this issue in its motions *in limine* to underscore the importance of this evidence and to avoid burdening the court with any unnecessary delay at trial.

## III.

## ADMIT EXCULPATORY STATEMENTS

### A. Fairness Dictates that Ms. Aguilar-Buruel Be Allowed to Admit Testimony About her Exculpatory Statements to Provide Context to Statements Offered by the Government.

Ms. Aguilar-Buruel anticipates the government will seek to admit testimony about statements allegedly made by her. She also anticipates the government will seek to elicit testimony about only part of these statements. If this turns out to be the case, Ms. Aguilar-Buruel requests that testimony about the entirety of her statements be allowed. Fairness dictates that Ms. Aguilar-Buruel be allowed to put into context any partial statement allegedly made by her that the government seeks to admit. Under two related principles, this Court has the power to allow testimony about the

entirety of Mr. Ceniseros's alleged statements, not just the statements specifically offered by the government.

***1. "Open Door" Rationale***

The Ninth Circuit has historically allowed a party to introduce prior statements because they were "part of the same conversation or document from which impeaching inconsistent statements were drawn." United States v. Collicott, 92 F.3d 973, 979-80 (9th Cir. 1996). Known as the "opened door' rationale," this principle allows for admission of statements otherwise inadmissable as hearsay. Id. at 980-81.

If, as anticipated, the government seeks to dislodge and admit a portion of Ms. Aguilar-Buruel's statements in an attempt to attack a part of her defense, Ms. Aguilar-Buruel must be allowed to introduce the remainder of her statements. Allowing the government to leave the impression that, in response to questioning by agents Ms. Aguilar-Buruel stated one thing, and one thing only, would mislead the jury. The government should not be allowed to "pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statement." Id. at 980 (quoting United States v. Tarantino, 846 F.2d 1384, 1411 (D.C. Cir. 1988).

***2. Principle of Completeness***

A principle "intimately related to the 'opened door' rationale" is the "Principle of Completeness." Id. at 982; see also United States v. Li, 55 F.3d 325, 329 (7th Cir. 1995). This principle allows for introduction of a fuller, more complete version of a statement to ensure that it is presented in its proper context.

As codified by Rule 106, the Principle of Completeness applies only to writings admitted into evidence. Collicott, 92 F.3d at 982-83; Li, 55 F.3d at 329.[2] The operation of the Principle of

---

[2] The government is fond of citing United States v. Ortega, 203 F.3d 675 (9th Cir. 2000), as standing for the proposition that "self-serving hearsay," *i.e.*, a defendant's exculpatory statements, cannot be admitted under Rule 106 because the government will not introduce its portion of the statements by a writing. A closer reading ofOrtega reveals that this is not the case for several reasons. First, Ortega does not hold that Rule 106 only applies to writings—it simply states, citing Collicott, that Rule 106 "'does not compel admission of otherwise inadmissible hearsay evidence.'" Id. at 682. See FED. R. EVID. 106 (Rule only permits introduction of evidence "which ought in fairness to be considered contemporaneously" with other evidence, not all evidence). Second, Ortega did not address the argument that Rule 106 would be unnecessary unless it was intended to admit otherwise inadmissible (continued...)

Completeness, however, is not necessarily limited to writings admitted into evidence, but extends to oral statements. See Collicott, 92 F.3d at 983 n.12; Li, 55 F.3d at 329. Rule 611(a) "grants district courts the same authority regarding oral statements which FED. R. EVID. 106 grants regarding written and recorded statements." Li, 55 F.3d at 329. Relevant to this Court's decision whether to admit a fuller version of Ms. Aguilar-Buruel's statements is "whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) ensures a fair and impartial understanding of the evidence." Id.

Allowing the government to selectively choose which portions of Ms. Aguilar-Buruel's statements the jury will hear will be misleading. Basic fairness dictates that Ms. Aguilar-Buruel be allowed to admit those portions of her statements that will explain and put in context those portions highlighted by the government.

## IV.

## PRECLUDE EXPERT TESTIMONY

Ms. Aguilar-Buruel has received no notice of the government's intent to introduce expert testimony regarding the chemistry of the drugs in this case, or their value. Because Federal Rule of Criminal Procedure 16(a)(1)(E) requires notice, on that basis alone, any government expert testifying about the chemistry of the drugs or the value of the drugs should be excluded.

Even if adequate notice is provided, the Court should nonetheless exclude evidence of the value of the drugs. Such testimony is irrelevant and therefore inadmissible under Federal Rule of Evidence 402. Even if minimally probative, such evidence should be excluded under Rule 403 because it is unduly prejudicial. Moreover, if the government does not introduce value testimony, Ms. Aguilar-Buruel offers to stipulate that the quantity of narcotics in this case is a distributable, not personal use, quantity. This obviates the need for value testimony, and also counsels for prohibiting the government from bringing the marijuana into the courtroom in an attempt to prejudice the jury. See FED. R. EVID. 403; United States v. Merino-Balderrama, 146 F.3d 758, 762 (9th Cir. 1998)

---

[2] (...continued)
evidence. Finally, Ortega did not reverse the district court's evidentiary ruling precluding cross-examination regarding the defendant's exculpatory statements because Ortega "testified to the statements himself," so the government's presentation "did not distort the meaning of Ortega's statements . . . ." Id. at 683. Since the government will likely seek to preclude Ms. Aguilar-Buruel from presenting her own statements, Ortega is inapplicable.

("[A] defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under [Federal Rule of Evidence] 403.") (citing Old Chief v. United States, 519 U.S. 172 (1997)).

In the event that the Court disagrees with Ms. Aguilar-Buruel that the *wholesale* value of the drugs in this case is irrelevant and unduly prejudicial, the government should be precluded from offering evidence of so-called retail value. There is no evidence that Ms. Aguilar-Buruel is involved in street level sales; nor is there any evidence that any source of supply here was so involved. Retail value is therefore irrelevant and overly prejudicial. See FED. R. EVID. 402, 403.

This motion to preclude to exclude expert testimony also includes any presentation of evidence about the "structure" of drug organizations. Whether noticed or not, testimony of this ilk is impermissible. In a trial like this, the government may attempt to prejudice the jury by offering testimony regarding drug smuggling organizations. Such testimony is often offered to prove a defendant's knowledge and to bolster the government's case. For example, an agent may testify that "the driver always knows." Such statements are clearly false and must be excluded for multiple reasons. First, such testimony constitutes expert testimony. Second, it is irrelevant. Third, its prejudicial impact outweighs any probative value. Such testimony is identical to the drug organization "structure" and "modus operandi" testimony that the Ninth Circuit mandates must be excluded in drug cases. See United States v. Varela-Rivera, 279 F.3d 1174, 1179 (9th Cir. 2002) (citing United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), amended, 246 F.3d 1150 (9th Cir. 2001)); United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001); United States v. Pineda-Torres, 287 F.3d 860 (9th Cir. 2002).

**V.**

**PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. FED. R. EVID. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court as well. Here, Ms. Aguilar-Buruel timely requested notice of proposed Rule 404(b) and Rule 609 evidence in her

discovery requests to the government. In it's response to Ms. Aguilar-Buruel's motion to compel discovery, the government indicated that it intends to introduce Ms. Aguilar-Buruel's prior crossing as evidence of knowledge and lack of mistake. The government has failed, however, to give any further explanation of how when or where this alleged crossing occurred. In addition, the government has failed to make any argument as to why a single prior crossing is relevant in this case. The government does not meet its burden by making a vague and conclusory assertion that evidence of one prior crossing is relevant to knowledge or lack of mistake.

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; thus, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). It is not sufficient to state merely that the other act will be offered for one of the enumerated purposes. Instead, the government must state precisely how the fact of consequence may be inferred from the other acts evidence. The government has failed to meet this requirement in this case. Accordingly, any unnoticed evidence should be excluded from the trial based on a notice failure.

**VI.**

**EXCLUDE THE NARCOTICS FROM THE COURTROOM**

The government may intend to present to the jury at trial the narcotics found in the vehicle driven by Ms. Aguilar-Buruel. This visual display of serious narcotics, even if relevant, is unduly prejudicial to Ms. Aguilar-Buruel. See FED. R. EVID. 403. The narcotics' presence is needless, cumulative, irrelevant, and stirs the emotions of the jury. Accordingly, it is unduly prejudicial to Ms. Aguilar-Buruel and should be excluded. See FED. R. EVID. 401, 402 and 403.

**VII.**

**PRECLUDE AGENTS FROM TESTIFYING ABOUT "TERRORISM"**

Based on defense counsel's experience, agents who work at border crossings have recently taken to explaining to juries—during an explanation of what their job consists of—that their "primary" responsibility is to thwart terrorist attacks against the United States. Ms. Aguilar-Buruel moves to have

this line of testimony precluded. This case involves no allegations of terrorist activity. Such testimony is irrelevant and unduly prejudicial. FED. R. EVID. 402, 403.

## VIII.

## COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should make the grand jury transcripts available when the defense can show a particularized need. There is a particularized need in this case if a witness who testified before the grand jury will also testify at the trial of Ms. Aguilar-Buruel. The government must produce a transcript of a witness's testimony before the grand jury following the direct examination of the witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Federal Rule of Criminal Procedure 26.2(d).

Additionally, Ms. Aguilar-Buruel moves for the production of grand jury transcripts, even if the grand jury witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that witness likely testified based upon information provided by other agents. The government has thus adopted the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See FED. R. EVID. 801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party to make a statement concerning the subject matter," see FED. R. EVID. 801(d)(2)(C), and constitutes "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," see FED. R. EVID. 801(d)(2)(D).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might be Brady material or otherwise subject to production as explained above.

IX.

**ORDER PRODUCTION OF "SUPPLEMENTAL REPORTS"**

Ms. Aguilar-Buruel requests disclosure of any "supplemental reports" generated in this case. It has come to Ms. Aguilar-Buruel's attention that the government's recent practice is to not disclose these "supplemental reports." These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements made at the border. Ms. Aguilar-Buruel believes that such a report is discoverable under Brady and Rule 16. Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the reports become producible under Jencks. See, e.g, FED. R. CRIM. P. 26.2(d). If the government contends that any "supplemental report" generated in this case is not discoverable, Ms. Aguilar-Buruel requests that the Court view this report *in camera.*

X.

**ALLOW EACH JUROR TO HAVE A COPY OF THE JURY INSTRUCTIONS**

Juries consist of lay people who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense. In this case, there are numerous elements the government must prove to convict Ms. Aguilar-Buruel. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[3/]

XI.

**ALLOW ATTORNEY-CONDUCTED VOIR DIRE**

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Criminal Procedure 24(a), Ms. Aguilar-Buruel requests that her defense counsel have the opportunity to personally conduct *voir dire* of the prospective jury members. See Rosales-Lopez v. United States, 451 U.S. 182, 187 (1981) (holding that "lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges

---

[3/] Ms. Aguilar-Buruel is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies as well.

where provided by statute or rule, as it is in the federal courts"); Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir. 1998) (same).

**XII.**

**EXCLUDE THE INDICTMENT FROM THE JURY ROOM**

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," in the Ninth Circuit Manual of Model Jury Instructions, the Committee on Model Jury Instructions strongly recommends that the indictment not be sent into the jury room during deliberations. The commentary observes that neither the Federal Rules of Criminal Procedure nor case law requires sending a copy of the indictment to the jury room because the indictment is not evidence. Ms. Aguilar-Buruel urges this Court to follow the Committee's guidance. The language in the instant indictment intentionally sets forth the prosecution's theory of the case. Accordingly, jurors could be improperly persuaded by the similarities between the indictment allegations and the prosecutor's theory. Because the indictment is not evidence, but could potentially be mistaken for evidence, this document should not be permitted into the jury room during deliberations.[4/]

**XIII.**

**CONCLUSION**

For the foregoing reasons, Ms. Aguilar-Buruel respectfully requests that the Court grant the above motions in limine.

Respectfully submitted,

Dated: April 7, 2008

*/s/ Victor n. Pippins*
VICTOR N. PIPPINS
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Aguilar-Buruel
Victor_Pippins@fd.org

---

[4/] If the Court allows a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence, see United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989), and strike surplusage, United States v. Wellington, 754 F.2d 1457 (9th cir. 1985).