KAREN P. HEWITT
United States Attorney
PETER J. MAZZA
Assistant U.S. Attorney
California State Bar No. 239918
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5528

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELOISA LIZETH AGUILAR-BURUEL,<br><br>Defendant. | Criminal Case No. 08CR0250-WQH<br><br>DATE: April 21, 2008<br>TIME: 2:00 p.m.<br><br>**UNITED STATES' MOTIONS <u>IN</u> <u>LIMINE</u> TO:**<br><br>**(A) PRECLUDE ALL WITNESSES EXCEPT CASE AGENT;**<br>**(B) ALLOW ATTORNEY CONDUCTED <u>VOIR</u> <u>DIRE</u>;**<br>**(C) PROHIBIT REFERENCE TO PUNISHMENT, ETC.;**<br>**(D) PRECLUDE SELF-SERVING HEARSAY;**<br>**(E) LIMIT CHARACTER EVIDENCE;**<br>**(F) ADMIT EVIDENCE OF SPECIAL COMPARTMENT;**<br>**(G) PRECLUDE EVIDENCE OF DURESS AND NECESSITY;**<br>**(H) ADMIT DEMEANOR EVIDENCE;**<br>**(I) ADMIT EXPERT TESTIMONY BY THE UNITED STATES;**<br>**(J) PRECLUDE EXPERT TESTIMONY BY DEFENSE;**<br>**(K) RENEW ITS MOTION FOR RECIPROCAL DISCOVERY;**<br>**(L) ADMIT DOCUMENTS SEIZED AT ARREST;**<br>**(M) ADMIT DUPLICATES; AND**<br>**(N) ESTABLISH CHAIN OF CUSTODY.**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES.** |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, and hereby files its Motions in Limine. These motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On January 30, 2008, a Indictment was returned in the Southern District of California charging Defendant Eloisa Lizeth Aguilar-Buruel ("Defendant") with importation of 53.80 kilograms (approximately 118.36 pounds) marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of 53.80 kilograms (approximately 118.36 pounds) marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On January 31, 2008, the Court arraigned Defendant on the Indictment and entered a not guilty plea. The Court scheduled a motion hearing date for March 10, 2008.

On February 4, 2008, the United States filed motions for reciprocal discovery and fingerprint exemplars. On February 15, 2008, Defendant filed motions to compel discovery, dismiss, suppress, and for leave to file further motions. On March 4, 2008, the United States responded.

On March 10, 2008, the Court held a motion hearing. The Court set motion in limine date for April 21, 2008.

//

//

//

//

## II

## STATEMENT OF FACTS

### A. Primary Inspection

On Thursday, January 17, 2008, at approximately 8:01 p.m., Defendant entered the United States from Mexico at the Calexico, California, East Port of Entry. Defendant was the driver of a 1994 Ford Tempo, bearing Baja California license plate BEA9615 (hereinafter "the vehicle"). Customs and Border Protection ("CBP") Officer Charles Gipson was working in primary inspection lane four. Defendant applied for entry into the United States. Officer Gipson observed that Defendant was traveling with a minor female. Officer Gipson obtained a negative Customs declaration from Defendant. Officer Gipson referred Defendant and the vehicle to secondary.

### B. Secondary Inspection

Upon entering the secondary inspection area, Canine Enforcement Officer Monty McGee screened the vehicle with his narcotics/human detector dog. The dog alerted to the passenger side door. After learning of the dog alert, Officer Sergio Beltran instructed Defendant to move her vehicle to a parking stall. Defendant provided a DSP-150 as evidence of her identity. Officer Beltran inquired about the minor. Defendant stated that she was her daughter. Officer Beltran received a negative customs declaration from Defendant. In response to questioning, Defendant stated that she was on her way to Walmart and the vehicle belonged to her husband. Officer Beltran asked Defendant to step out of the vehicle and open the hood and trunk. She complied. After screening the vehicle again, the dog alerted to the rear seat of the vehicle. Defendant and her daughter were escorted to the secondary office. A patdown search was conducted and yielded

negative results. While searching the vehicle, Officer Beltran found 14 packages inside the dash, rear seat, front passenger seat, rear passenger door, and under the front passenger seat. One of the packages was probed and a leafy green substance was extracted which subsequently field tested positive for marijuana. The packages had a combined weight of 53.80 kilograms (approximately 118.36 pounds).

Officer Beltran seized the marijuana. A later search of Defendant revealed that she was in possession of $76.00. The vehicle was registered to Jesus Ernesto Sauceda-Sepulveda.

Special Agents Renato Gates and Lonnie Brasby were notified of the seizure and responded to the port to conduct the post seizure investigation. Upon arriving, the Agents assumed responsibility for Defendant's case.

**C. Defendant's Statement**

At approximately 12:58 a.m., Agent Gates advised Defendant of her arrest for importation of a controlled substance. Agent Gates further advised Defendant that before she was asked any questions regarding the circumstances of her arrest, Defendant must first understand her rights.

Agent Gonzalez advised Defendant of her Miranda rights, using a United States Customs Service Advice of Rights form. Agent Gates advised Defendant of her Miranda rights in the Spanish language as witnessed by Agent Brasby. This form was shown to Defendant, who was given the opportunity to read each statement as Agent Gates read them to her. After being read each statement of her rights, Agent Gates asked Defendant whether he understood that right. In each instance, she stated, "yes." Defendant then initialed next to each right. Finally, Defendant signed the form waiving her Miranda rights. During

the interview, Defendant denied knowledge of the marijuana concealed within the vehicle. Defendant further explained that she was on her way to Walmart. She borrowed her boyfriend's vehicle. She had been dating this person for a year. However, she was unable to provide a home address or work address for him, nor a description of any vehicles that belonged to him. She had only one cellular telephone number for him. Finally, she provided a general description of him.

**III**

**MOTIONS IN LIMINE**

**A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**B. THE COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR DIRE**

If the Court permits it, counsel for the United States respectfully requests time to conduct its own limited voir dire of the potential jurors.

**C. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and

improper. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition). Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in a drug smuggling trial, such reference is not only irrelevant and unfairly prejudicial, but an attempt for sympathy and jury nullification, as well.

Similarly, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or innocence. Therefore, the United States respectfully requests this Court to preclude any mention of possible punishment at any point in this trial.

**D. SELF-SERVING HEARSAY IS INADMISSIBLE**

Defendant's out of court statements are inadmissible hearsay when offered by Defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

In this case, the United States anticipates that Defendant may

attempt to have the United States' witnesses testify about certain statements which Defendant made to inspectors. Thus, the United States moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense witnesses.

**E. THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that Defendant may attempt to introduce testimony regarding Defendant's specific acts of prior good conduct. This would be improper, and thus should be prohibited. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). United States v. Barry, 841 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170 (9th Cir. 1979) cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under

Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a). See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (impermissible to ask character witness about defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves in limine to prohibit Defendant from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in smuggling.

**F. EVIDENCE OF THE SPECIAL COMPARTMENT SHOULD BE ADMITTED**

The United States should be permitted to present evidence regarding the compartments in which the controlled substance was hidden. The probative value of such evidence clearly outweighs any risk of prejudice.

Under Rule 401, relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that all relevant evidence is admissible.

In the instant case, the compartment within which the controlled substance was transported is extremely relevant. Defendant claimed that her husband, and later, her boyfriend owns the vehicle. The drugs were found inside the dash, rear seat, front passenger seat, and rear passenger door. This specially manufactured compartment shows that Defendant knew that she was transporting drugs in this vehicle.

The United States requests that evidence regarding the special compartments in the vehicle be permitted as it directly bears not only on the question of Defendant's knowledge of the concealed drugs and the crimes of crime of importation and possession of marijuana, but also on the very actions taken to conceal the drugs.

**G. THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

A district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997). If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); Moreno, 102 F.3d at 997 (addressing duress).

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and

invitation for jury nullification that would result from such comments.

**H. DEMEANOR EVIDENCE SHOULD BE ADMITTED**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle. Fed.R.Evid. 701; United States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); Unites States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendant's demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendant.

**I. EXPERT TESTIMONY FOR THE UNITED STATES SHOULD BE ADMITTED**

**1. Introduction**

The United States moves this Court to admit expert testimony regarding the modus operandi of drug couriers and the value of the controlled substance involved in this case. In addition, absent a stipulation by Defendant, the United States moves this Court to admit expert testimony regarding the controlled substance taken from

Defendant's vehicle. The United States intends to call a special agent with the United States Immigration and Customs Enforcement as an expert in narcotics trafficking, the value of illicit narcotics, and distributable quantities of narcotics. Additionally, the United States intends to call an expert from Immigration and Customs Enforcement to testify regarding the Treasury Enforcement Communication ("TECS") system. Finally, absent a stipulation from Defendant, the United States will call a forensic chemist from the Drug Enforcement Administration as an expert in identifying the narcotic. The Court should admit such testimony as relevant and reliable.

**2. Standard of Admissibility**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999).

Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony. Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of

expertise," including, "experts in drug terms, handwriting analysis, [and] criminal modus operandi, . . . ").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi") (internal quotations omitted); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member). An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

**3. Evidence Regarding Modus Operandi of Drug Couriers**

The United States moves to present expert testimony regarding the modus operandi of drug-couriers, in particular, how the drugs are moved from the border cities in Mexico, over the border, and delivered in the United States for further distribution. Such testimony is

proper to help the jury understand the evidence in the case, to put that evidence in a relevant context, and to ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question whether Defendant knew of the drugs in the vehicle she drove into the United States; and this is exactly the type of evidence deemed appropriate in United States v. Murillo, 225 F.3d 1169 (9th Cir. 2001), and a litany of cases preceding Murillo.

In Murillo, the Ninth Circuit affirmed a district court's decision to allow the United States to introduce drug-courier expert testimony during its case-in-chief. The Murillo court noted that the modus operandi evidence was relevant to the issue of knowledge, and that the expert limited the testimony to the drug-courier's role or methods of operation rather than expounding on the roles of a larger hypothetical drug organization for which no evidence existed in that case. Id. The court distinguished and limited the Ninth Circuit's opinion in United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2000), as amended 246 F.3d 1150 (9th Cir. 2001).

In Vallejo, the Ninth Circuit held that the district court abused its discretion by allowing modus operandi or so-called "structure" evidence to be introduced in a case where the relevancy of the expert testimony to the defendant's knowledge of the drugs was not clearly articulated. Id. at 1015-16. In Murillo, the appellate court noted that Vallejo was also distinguishable because, there, the defendant did not raise an issue about the absence of fingerprints on the drug evidence whereas Murillo challenged the absence of fingerprints. Id. at 1016 n.3 (distinguishing United States v. Alatorre, 222 F.3d 1098, 1099 (9th Cir. 2000)).

The Ninth Circuit in Murillo simply affirmed what has, prior to

Vallejo, been a well-established rule in the Ninth and other circuits that expert testimony regarding the modus operandi of a particular business, be it legal or illegal, is admissible even in non-complex, non-conspiracy cases provided the testimony is relevant and helpful to the jury in understanding a fact in issue. See United States v. Campos, 217 F.3d 707, 712, 719 (9th Cir. 2000) (affirming admission of expert testimony during case-in-chief regarding the value of marijuana seized and the structure of drug-smuggling organizations in non-complex case in which conspiracy was not charged); United States v. Webb, 115 F.3d 711, 713-15, 716 (9th Cir. 1997); United States v. Cordoba, 104 F. 3d 225, 229-30 (9th Cir. 1997); Gil, F.3d at 1422; United States v. Palma, 997 F.2d 525, 534-35 (9th Cir. 1993).

Evidence about the drug-trafficking business, as well as admission of evidence about the modus operandi of drug couriers, is consistent with well-established law allowing as relevant to knowledge expert testimony about a criminal organization's modus operandi. See Alonso, 48 F.3d at 1536 (holding that law-enforcement officers may testify regarding "typical methods and techniques employed in an area of criminal activity," and explain how defendant's conduct conforms to typical methods); Gil, 58 F.3d at 1421-22 (admitting expert testimony regarding general practice of drug traffickers to establish defendants' modus operandi); United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir. 1993) (permitting officers to testify that "bending, shifting, twisting, shadow, and hand moving" was "furtive" behavior by car occupants); Taren-Palma, 997 F.2d at 534 (upholding expert testimony regarding the use of guns in narcotic transactions); United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir. 1991) (holding that an agent with expertise in narcotics investigations may aid jury in

understanding defendant's role in the charged offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that the expert properly testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988) (distinguishing testimony about a defendant's guilt or innocence from expert testimony regarding the various roles individuals may play in illegal enterprises); United States v. Guzman, 8439 F.2d 447 (9th Cir. 1988) (admitting expert agent's testimony that car switch is common maneuver used by narcotics traffickers); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770 F.2d 825, 831 (9th Cir. 1985); United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (per curium) (allowing expert testimony that a defendant's actions were consistent with the modus operandi of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about, at a minimum, the role and modus operandi of drug couriers. The United States does not intend to introduce during its case-in-chief so-called profile and blind-mule testimony. See, e.g., Reid v. Georgia, 448 U.S. 438, 440 (1979) (defining "drug courier profile" evidence); United States v. Lui, 941 F.2d 844, 846 (1991). However, the United States reserves the right to introduce expert testimony about the modus operandi of drug-trafficking organizations, testimony about vehicle-registration procedures, blind-mule, and profile testimony if Defendant opens the door to any of those

categories of evidence during opening statements, cross-examination, or Defendant's case-in-chief. See Vallejo, 237 F.3d at 1016; Alatorre, 222 F.3d at 1100 n.3 (structure and organizational testimony proper because Alatorre raised the fingerprints issue); United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir. 1989) (drug-courier profile and "blind-mule" testimony admissible where defense counsel opens door).

The Court should admit the requested evidence for the foregoing reasons and to avoid the risk that the jury may not understand how Defendant's arguably innocuous acts comport with drug smuggling.

**4. Evidence Regarding Value of the Controlled Substance**

The United States moves for the narcotics expert to testify regarding the quantity of controlled substance found in the vehicle Defendant brought into the United States, and the street and wholesale value of the controlled substance both in the United States and in Mexico. The Ninth Circuit permits the use of such expert testimony.

In United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin. At trial, the United States introduced expert testimony regarding the street value of the heroin, assuming the drugs had been repeatedly cut and sold on the street. The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence. Id. at 812; see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity and quality of narcotics is relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); United States v. Kearney, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to demonstrate defendant's knowledge).

The testimony of the United States' expert regarding the quantity and value of the controlled substance seized is circumstantial evidence of Defendant's knowledge and intent regarding the drugs in the vehicle Defendant drove to the port of entry the day of her arrest. Knowledge and intent are essential elements of the offenses charged. The value testimony will tend to show that Defendant knew she possessed the illegal drugs and intended to further distribute them. Most important, such evidence will also help the jury understand the role of the international border on the value of the narcotics, and the facts at issue in this case. Thus, the Court should admit the testimony.

**5. <u>53.80 Kilograms of Marijuana is an Amount for Distribution</u>**

The United States intends to introduce expert testimony that 53.80 kilograms of marijuana is an amount for distribution, not for personal use. As indicated in the case law cited above, such evidence is relevant and admissible. <u>Kinsey</u>, 843 F.2d at 387-88. The United States intends to offer the narcotics expert's testimony to show that Defendant intended to distribute the marijuana found in her vehicle. Such testimony is relevant to the issues of knowledge and intent to distribute; it is particularly significant to the jury's understanding of the facts of the case. Accordingly, the Court should allow such evidence to enable the United States to prove essential elements of the charged offenses.

**6. <u>Expert Testimony Regarding TECS</u>**

At this point, the Government does not plan to introduce Treasury Enforcement Communication System ("TECS") evidence during its case-in-chief as Rule 404(b) evidence or evidence that may be "inextricably intertwined" to the charges against Defendant. However, if during

Defendant's case, information from TECS becomes relevant as impeachment or otherwise, the Government requests to introduce the TECS records in this case. As such evidence is not subject to Rule 404(b), or any discovery obligation on the part of the Government, the Government is not obligated to discover TECS records pre-trial.[1/] However, if the Government does use TECS information in its case-in-chief, it will turn them over prior to trial.

United States v. Sanchez-Robles, 927 F.2d 1070 (9th Cir. 1991) is analogous here. In Sanchez-Robles, the defendant was convicted of importation of marijuana and cocaine, as well as possession of those drugs with intent to distribute, stemming from her arrest at the Calexico Port of Entry. See id. at 1070. During its rebuttal case, the Government offered TECS evidence to show border crossings of both the defendant's vehicle, and the vehicle she drove on the night of her arrest. See id. at 1078. This evidence was offered for two purposes. First, to contradict the story given by the defendant to customs officials upon her arrest, when she explained that she borrowed the vehicle from a friend she had known for just one month. The TECS evidence showed that the van she borrowed and her own vehicle made several crossings close in time to one another before the defendant claimed to have known the owner of the van. See id. Second, the defendant's daughter testified at trial that she was on a date in the family vehicle on the evening of the defendant's arrest. The TECS evidence offered by the Government showed no crossing that evening. See id. The Ninth Circuit upheld the use of the TECS evidence as

[1/] See United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991) (holding that Government is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that trial court order requiring Government to disclose "any and all impeachment evidence . . . which tends to negate guilt" including rebuttal evidence exceeded scope of court's authority under Rule 16).

relevant, not in violation of rule 608(b), which prohibits extrinsic evidence solely for impeachment, and not in violation of rule 404(b). As to the latter point, the Court held that the evidence was inextricably intertwined to the offense conduct charged and, accordingly, held that the TECS evidence was properly admitted. See id.

**7. Expert Testimony that the Substance Seized is Marijuana**

Absent a stipulation by Defendant, the United States intends to call a forensic chemist from the Drug Enforcement Administration to testify that the substance seized from Defendant's vehicle is marijuana, a Schedule I controlled substance. The United States anticipates that the forensic chemist will testify that the chemist performed various tests on the substance seized from Defendant's vehicle, and that these tests all indicated that the substance is in fact marijuana. This expert will base this opinion on the chemist's background, education and experience, along with the chemist's knowledge and use of accepted scientific methods of testing. This testimony bears directly on an element of the charged offense -- that marijuana is a prohibited drug.

**J. THE COURT SHOULD PRECLUDE DEFENDANT FROM OFFERING EXPERT TESTIMONY**

On March 4, 2007, the Court granted the United States request for reciprocal discovery, pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b). The United States had previously requested that Defendant permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of

Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requested that Defendant disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries were to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel has stated he may call an expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

**K. UNITED STATES RENEWED MOTION FOR RECIPROCAL DISCOVERY**

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery including photographs Defendant intends to introduce at trial. The United States requests that

Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents, photographs, or statements.

**L. <u>THE COURT SHOULD ADMIT DOCUMENTS SEIZED AT TIME OF ARREST</u>**

It is well-established under Ninth Circuit precedent that documents seized from a defendant at the time of arrest are properly admissible against the defendant. At the time of Defendant’s arrest in this case, she had several documents related to her identity, such as her driver's license, and other "pocket trash." The Government should be permitted to use in its prosecution these documents taken from Defendant at the time of her arrest.

Documents relating to the vehicle that Defendant was driving when the marijuana was found are admissible as adopted admissions by a party opponent and are not excluded by the hearsay rule. <u>See</u> Fed. R. Evid. 801(d)(2)(B).

**M. <u>THE COURT SHOULD ALLOW ADMISSION OF DUPLICATES</u>**

In the alternative, copies of all of the above-mentioned documents were made by the case agent. In the event that the original documents taken from Defendant are no longer available, the Court should allow the introduction of copies of these documents. The Government anticipates having a witness with knowledge of both the original documents seized from Defendant as well as the copies that were made of those documents. A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. Fed.R.Evid.

103.

**N. THE COURT SHOULD NOT REQUIRE THE GOVERNMENT TO PROVE EACH LINK IN THE CHAIN OF CUSTODY**

The Government intends to introduce evidence of the 53.80 kilograms of marijuana discovered throughout Defendant's vehicle when she and her young daughter entered the United States. Evidence of the marijuana, which was first seized by inspectors and later tested by a DEA chemist, is admissible because there is a presumption of regularity in its handling by these public officials and the testimony of these witnesses will show that the marijuana has not changed in a material way since its seizure. The Government should not be required to prove every link in the chain of custody in order for marijuana evidence to be admissible. The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed (or the object seized). Factors to be considered are the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of inter-meddlers tampering with it. There is, however, a presumption of regularity in the handling of exhibits by public officials. United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), cert. denied, 445 U.S. 856 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). If this Court finds that there is a reasonable possibility that a piece of evidence has not changed in a material way, the Court has the discretion to admit the evidence. Id.

The Government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of

evidence. Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). The marijuana seized from Defendant's car was marked, photographed, secured, and transported in accordance with standard operating procedures. Because the marijuana has not changed in a material way and has been properly preserved, the Government should not have to prove every link in the chain of custody from the time it was seized through the time of trial.

## IV

## CONCLUSION

For the above stated reasons, the United States respectfully requests that its Motions in Limine be granted.

DATED: April 7, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*s/ Peter J. Mazza*
PETER J. MAZZA
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ELOISA LIZETH AGUILAR-BURUEL,<br>Defendant. | Case No. 08CR0250-WQH<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Motions in Limine, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Victor Pippins, Esq.
   Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 7, 2008.

*s/ Peter J. Mazza*
PETER J. MAZZA